IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NEIL ROBINSON,

        Petitioner,

v.                                                CIV 11-0893 MV/KBM

RAY TERRY,

        Respondent.

## **ORDER TO RESPOND**

Petitioner is a Jamaican national who is incarcerated and facing impending deportation. He filed this action seeking habeas relief under 28 U.S.C. § 2241. He believes the proceedings have taken too long already and that "ICE will not be able to remove [him] in the foreseeable future, because the Jamaican government will not accept [him.]" *Doc. 1* at 4. The United States moves to dismiss the petition because, among other reasons, Petitioner is allegedly delaying the proceedings by not cooperating and "telling the Jamaican Consulate that he is not a citizen of Jamaica, but rather a citizen of Guyana." *Doc. 7* at 2.

The Court will require Petitioner to respond to the United States' motion by the date below, and specifically address the factual allegations of Petitioner's noncooperation and alternatives for obtaining travel documents. *See id.* at 2, 3, 4. Resolution of that issue is paramount because, as the United States notes, if he is not cooperating and impeding the removal process, the "90-day-statutory clock" has not begun to run, and that would have consequences

for Petitioner's sole claim under *Zadvydas*. *See Doc. 1* at 6-8; *Doc. 7* at 3 & n.1. So that Petitioner is aware of the consensus of the courts that have addressed this issue, the following is a summary from a recent decision:

> Once a removal order becomes "final," the alien's "removal period" begins to run. Specifically, the "removal period" starts on the latest of the following (1) the date when the order of removal issued by an Immigration Judge ("IJ") becomes administratively final (that is, appeal to BIA was either taken and ruled upon in the sense that the appeal was denied, or the time to file such appeal simply expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date when the alien is released from confinement. *See* 8 U.S .C. § 1231(a)(1)(B).
>
> Under Section 1231(a)(1)(A), the government has a 90-day "removal period" to remove an alien. Detention during this 90-day removal period is mandatory. Section 1231(a)(1)(c), however, provides that this 90-day removal period may be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(c).
>
> Moreover, even after the 90-day "removal period," the government may further detain the alien under 8 U.S.C. § 1231(a)(6). However, the Supreme Court has held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis,* 533 U.S. 678, 689 (2001). Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." *Id.* at 700-01. However, after establishing this "presumptively reasonable period of detention," the Supreme Court stressed that
>
>> after this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

> *Id.* at 701.
>
> The alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. *Zadvydas,* 533 U.S. at 699-701. *See also, e.g., Xi v. U.S. I.N.S.,* 298 F.3d 832, 839-40 (9th Cir. 2002); *Kacanic v. Elwood,* 2002 WL 31520362 (E.D. Pa. Nov. 8, 2002); *Fahim v. Ashcroft,* 227 F. Supp. 2d 1359, 1367-68 (N.D. Ga.2002); *Lema v. U.S. I.N.S.,* 214 F. Supp. 2d 1116, 1117-18 (W.D. Wash. 2002), *aff'd,* 341 F.3d 853 (9th Cir. 2003).
>
> Moreover, no language in *Zadvydas* excluded or limited the operation of the tolling-like function enunciated in 8 U.S.C. § 1231(a)(1)(c) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.?"). Consequently, an alien who, during his presumptive six-month *Zadvydas*-based period, takes actions delaying his removal, cannot demand his release upon expiration of these six months. *See, e.g., Wang v. Carbone,* No. 05-2386 (JAP), 2005 WL 2656677 (D.N.J. Oct. 17, 2005) (calculating the presumptive period excluding the period of non-cooperation and relying on *Riley v. Greene,* 149 F. Supp. 2d 1256, 1262 (D. Colo. 2001) and *Sango-Dema v. District Director,* 122 F. Supp. 2d 213, 221 (D. Mass. 2000)). Rather, the period affected by the alien's actions is excluded from the six-month presumptive period articulated in *Zadvydas,* causing a quasi-tolling.
>
> Thus, "*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Pelich v. INS,* 329 F.3d 1057, 1060 (9th Cir. 2003) (cited with approval in *U.S. ex rel. Kovalev v. Ashcroft,* 71 Fed. Appx. 919, 924 (3rd Cir. 2003).

*Resil v. Hendricks,* 2011 WL 2489930 at ** 4-5 (D.N.J. June 21, 2011).

Petitioner is hereby notified that failure to respond as ordered could result in a dismissal of this action without prejudice. This Court has the inherent power to impose a variety of sanctions on litigants in order to, among other things, regulate its docket and promote judicial efficiency. *Martinez v. Internal Revenue Service,* 744 F.2d 71, 73 (10th Cir. 1984). One such sanction within the discretion of the Court is to dismiss an action for want of prosecution. *E.g.,*

3

*Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642-43(1976); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962); *see also Costello v. United States,* 365 U.S. 265, 286-87 (1961) (district court may dismiss *sua sponte* for failure to comply with order of court); *United States ex rel. Jimenez v. Health Net, Inc.,* 400 F.3d 853, 855 (10th Cir. 2005) ("We . . . dismiss the appeal *sua sponte* as to both Appellants for lack of prosecution as reflected by their failure to respond to our order requiring a timely status report to prevent dismissal. . . . Dismissal of the appeal is a strong sanction to be sure, but it is no trifling matter for Appellants to abuse our office by disappearing and failing to meet our deadlines. The federal courts are not a playground for the petulant or absent-minded; our rules and orders exist, in part, to ensure that the administration of justice occurs in a manner that most efficiently utilizes limited judicial resources.").

Wherefore,

**IT IS HEREBY ORDERED** that no later than Friday, November 4, 2011, Petitioner shall file his response to the United States' motion and that the United States file its reply no later than Friday, November 11, 2011. Petitioner is hereby notified that failure to respond to this Order may result in dismissal of this action without further notice.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE